[Cite as *Barker v. Teeters*, 2012-Ohio-6053.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

ERIC BARKER dba TEETERS : 
CHIROPRACTIC

:

Plaintiff-Appellant

: C.A. CASE NO. 25266

vs. : T.C. CASE NO. 2011-CV-03177

W. RICHARD TEETERS, ET AL. : (Civil Appeal from the
Common Pleas Court)

Defendant-Appellees :

· · · · · · · · ·

**O P I N I O N**

Rendered on the 21st day of December, 2012.

· · · · · · · · ·

Charles T. Lester, Jr., Atty. Reg. No. 0017601, 635 West 7th Street, Suite 401, Cincinnati, Ohio 45203
        Attorney for Plaintiff-Appellant

Dianne F. Marx, Atty. Reg. No. 0022988, 1900 Kettering Tower, 40 North Main Street, Dayton, Ohio 45423
        Attorney for Defendant-Appellees W. Richard Teeters, Holly Kohlbacher, and Robert V. Zimmer

· · · · · · · · ·

Grady, P.J.:

{¶ 1} Plaintiff Eric Barker and Defendants W. Richard Teeters, Robert V. Zimmer, and Holly Kohlbacher are chiropractors. In August of 2008, Teeters sold his chiropractic

practice, Teeters Chiropractic, Inc. to Barker. The contract of sale provided that Teeters would thereafter be an employee of the practice. Kohlbacher was and had been an employee of the practice.

{¶ 2} On September 9, 2009, after pleading guilty, Barker was convicted of a federal drug violation and was sentenced to serve a thirty-six month prison term, which commenced in September of 2010. The State Chiropractic Board subsequently revoked Barker's chiropractic license, retroactive to September 1, 2010.

{¶ 3} In April of 2011, Teeters and Kohlbacher resigned their employment with Teeters Chiropractic, Inc. and rented space from Zimmer at HealthSource of Kettering. Teeters removed patient files from Teeters Chiropractic, Inc. as well as certain assets of the practice he had sold to Barker.

{¶ 4} Barker filed a complaint against Teeters, Zimmer, and Kohlbacher, alleging multiple claims for relief. The complaint is captioned a "Verified Complaint" and was filed on behalf of Teeters Chiropractic, Inc. and Barker by his wife, Rachel Barker, who averred that she is attorney-in-fact for her husband and that "I have personal knowledge of many of the foregoing allegations and am competent to testify thereto."

{¶ 5} Defendants answered Barker's complaint, and Teeters also filed a counterclaim for monies allegedly due him by Barker. The counterclaim was supported by Teeters's affidavit. Defendants also moved for summary judgment on Barker's claims for relief.

{¶ 6} The trial court granted Defendants' motion for summary judgment on Barker's claims for relief. Teeters's counterclaim was heard in a bench trial. The parties stipulated that Barker owed Teeters a total of $134,753.47. The court rejected Barker's defense that Teeters's right to relief was barred by the parties' Standby Creditor's Agreement, and it

entered judgment for Teeters and against Barker in the amount of $131,027.47. Barker filed a notice of appeal.

{¶ 7}  First assignment of error:

"THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT."

{¶ 8}  Barker argues that the trial court erred when it relied on Teeters's affidavit because the affidavit contains inadmissible hearsay concerning what Teeters was told by the State Chiropractic Board.

{¶ 9}  Several of Barker's claims for relief implicated Teeters's removal of patient records from Teeters Chiropractic, Inc. following Barker's imprisonment. Barker argued that his interest in the records is protected by Ohio Adm.Code 4734-8-07(E), a promulgation of the State Chiropractic Board that addresses a licensed chiropractor's duties to provide patients an opportunity to transfer or obtain their records upon the chiropractor's termination of his practice. Section (E) of the rule states:

> If a chiropractic physician is the employee of another chiropractic physician, the patient records belong to the employer and therefore the chiropractic physician employee is not required to comply with this rule. It is the employer chiropractic physician's responsibility to maintain continuity of care, or to comply with this rule if patient care will be terminated upon a chiropractic physician employee's leaving or terminating employment.

{¶ 10} In the affidavit submitted in support of his counterclaim,[1] Teeters averred:

24. Because my leaving the practice as an employee would mean that patients could not receive chiropractic care at "Teeters Chiropractic" since there was no one there with a license to practice, I contacted the State of Ohio Chiropractic Board ("Board") to find out what my professional responsibilities were.

25. I was instructed by the Board to, among other things, provide notice to patients of my new address since if this did not occur there could be issues of "abandonment."

26. Based upon the instruction from the Board, I prepared a notice, a copy of which is attached hereto as Exhibit "4," and posted the notice at "Teeters Chiropractic." I was the only person who posted these notices at "Teeters Chiropractic."

27. Upon information and belief, Rachel Barker removed all such notices.

28. I relocated my practice to 2436 E. Dorothy Lane, Kettering, Ohio 45420 where I rented space from Robert Zimmer, D.C., for a short time.

* * *

---

[1] It may be that the affidavit was intended to support Defendants' motion for summary judgment, which was filed on the same date as the counterclaim.

36. Additionally, my putting up signs to notify patients of my relocation was not done with the intent to interfere with Mr. Barker's use of the premises, as Mr. Barker was in prison, there was no other chiropractor at Teeters Chiropractic at the time, and the Ohio State Chiropractic Board advised me to notify these patients.

{¶ 11} In cases in which words have independent legal consequences, the words are relevant without regard to their truth, and as such, those statements are not hearsay. Those types of statements are commonly known as "verbal acts" or "operative facts." * * * The out-of-court statement is not offered for its truth and, consequently, it is not hearsay. Weissenberger's Ohio Evidence Treatise (2011 Ed.), § 801.8.

{¶ 12} Teeters's references to what he was told by the State Chiropractic Board were not offered to prove the truth of what Teeters was told by the Board or its employees. They were instead evidence of operative facts demonstrating why Teeters acted as he did, and were not subject to the rule against hearsay.

{¶ 13} In any case, the trial court reasoned that, because Barker had lost his chiropractic license, he was no longer entitled to whatever benefits or rights were conferred on him by Ohio Adm.Code 4734-8-07(E) as Teeters's employer. We agree.

{¶ 14} Barker also argues that Teeters's affidavit contains misstatements of the law. He does not identify what the misstatements are, and there is no basis to find that the trial court relied on them.

{¶ 15} Barker also argues that the court erred in relying on "other self-serving but inadmissible evidence" in Teeters's affidavit. Barker does not identify what statement he

refers to. App. R.12(A)(6) requires an appellant to reference the record, which Barker has failed to do.

{¶ 16} Finally, Barker complains that some of Teeters's statements are contradicted by the allegations in Barker's complaint, as "verified" by Rachel Barker. However, she only generally averred personal knowledge of "many of" the allegations in the complaint, which she failed to identify.

{¶ 17} Civ.R. 56(B) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or otherwise as provided in this rule, must set forth specific facts showing that there is no genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

{¶ 18} Rachel Barker's verification of her complaint was neither specific nor in response to the allegations in Teeters's counterclaim. We agree with the trial court that Barker failed to satisfy his burden to preserve a genuine issue of material fact in the manner and to the extent that Civ.R. 56(E) requires.

{¶ 19} The first assignment of error is overruled.

{¶ 20} Second assignment of error:

"THE TRIAL COURT ERRED IN FINDING THAT BARKER WAS NOT AN INTENDED BENEFICIARY OF THE STANDBY CREDITOR AGREEMENT."

{¶ 21} On September 30, 2008, after Barker fell behind in the payments he owed Teeters for the purchase of Teeters Chiropractic, Inc., they executed a document titled Standby Creditor's Agreement. The document states that, to induce Huntington National Bank to extend a loan to Barker, Teeters agreed to accept no further loan payments from Barker, to remit any payments he received from Barker to Huntington National Bank, and to take no action to enforce his claims against Barker until any loan made to him by Huntington National Bank is satisfied.

{¶ 22} On the same date the parties executed the Standby Creditor's Agreement, Barker obtained a loan from Huntington National Bank. Barker subsequently defaulted on that loan obligation.

{¶ 23} Barker argued that, inasmuch as the loan he obtained from Huntington National Bank remains unsatisfied, Teeters is barred from seeking the relief in his counterclaim against Barker. The trial court held that Barker cannot invoke the Standby Creditor's Agreement because he is merely an incidental beneficiary of the promises Teeter made in the agreement, not the intended beneficiary of those promises.

{¶ 24} In *Hill v. Sonitrol of Southwestern Ohio,* 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (1988), the Supreme Court wrote:

In *Norfolk & Western Co. V. United States* (C.A.6, 1980), 641 F.2d 1201, 1208, the United States Court of Appeals for the Sixth Circuit, applying Ohio law, explained the "intent to benefit" test, a test used to determine whether a third party is an intended or incidental beneficiary:

" * * * Under this analysis, if the promisee * * * intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract.

"* * * [The mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary."

{¶ 25} The promises of forbearance Teeters made in the Standby Creditors Agreement created a duty owed by Teeters to Huntington National Bank, which was the intended beneficiary of the promises Teeters made. Teeters owed no duty to Barker that was satisfied by Teeters's promises, which conferred no more than an incidental benefit on Barker. We agree with the trial court that Barker obtained no benefit under the Standby Creditors Agreement which is enforceable by him against Teeters.

{¶ 26} The second assignment of error is overruled. The judgment from which the appeal was taken will be affirmed.


Froelich and Hall, J.J., concur.


Copies mailed to:

Charles T. Lester, Jr., Esq.
Dianne F. Marx, Esq.
Hon. Mary Katherine Huffman